UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff(s),<br><br>v.<br><br>JAMES B. CATLEDGE, et al.,<br><br>Defendant(s). | Case No. 2:12-CV-887 JCM (NJK)<br><br>ORDER |

Presently before the court is plaintiff Securities and Exchange Commission's ("SEC") motion for entry of final judgment against defendant James B. Catledge. (ECF No. 58). Catledge filed a response (ECF No. 61), but the SEC has not filed a reply, and the time for doing so has passed.

**I.    Background**

On May 24, 2012, the SEC filed a complaint against Catledge, Derek F.C. Elliott, EMI Resorts (S.V.G.) Inc., EMI Sun Village, and Sun Village Juan Dolio, Inc., alleging the defendants solicited investments in a fraudulent scheme involving the offer and sale of over $163 million of investment contracts in unregistered transactions to approximately 1,200 investors. (ECF No. 1). The complaint includes five causes of action: (1) violation of Section 17(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77q(a)(1), against all defendants; (2) violation of Section 17(a)(2) and (3) of the Securities Act, 15 U.S.C. § 77q(a)(2) and (3), against all defendants[1]; (4) violation of Sections 5(a) and (c) of the Securities Act, 15 U.S.C. § 77e(a) and (c), against Catledge, Elliott, EMI Sun Village, and Sun Village Juan Dolio; (5) Violation of Section 15(a) of

---
[1] The complaint omits a third cause of action. (ECF No. 1).

**James C. Mahan**
**U.S. District Judge**

the Exchange Act, 15 U.S.C. § 780(a), against Catledge and Elliott; and (6) unjust enrichment of relief defendant D.R.C.I. trust. *Id.*

On December 20, 2012, and SEC and Catledge filed a joint stipulation to stay this case pending resolution of the criminal charges against Catledge in *United States v. James Catledge, et al.*, case no. 3:12-cr-00678 (N.D. Cal.). (ECF No. 20). The court granted the motion to stay on December 21, 2012. (ECF No. 23).

On May 2, 2018, Catledge pleaded guilty to one count of mail fraud. *Catledge*, case no. 3:12-cr-00678, ECF Nos. 241, 242. On December 12, 2018, he was sentenced to a term of sixty (60) months imprisonment to be followed by three (3) years of supervised release. *Id.* at ECF No. 303. Restitution in the amount of $32,737,143.65 was imposed on May 15, 2019. *Id.* at ECF No. 339.

On May 3, 2018, the court approved a consent judgment between the SEC and Catledge. (ECF No. 44). The Catledge consent judgment fully incorporates the stipulated consent, which provides, in relevant part, that:

> [T]he Court shall determine whether it is appropriate to order disgorgement of ill-gotten gains and/or a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and, if so, the amount(s) of the disgorgement and/or civil penalty. The Defendant further understands that, if disgorgement is ordered, Defendant shall pay prejudgment interest thereon, calculated from October, 2004, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2).

(ECF Nos. 43 at 2, 44 at 4). No provision is made for the imposition of a civil penalty. (ECF No. 44). The Catledge consent judgment also provides for the issuance of a permanent injunction, enjoining future violation of the federal Securities Act and Exchange Act. *Id.*

On June 28, 2019, the SEC filed a motion to lift the stay (ECF No. 56) following the resolution of the criminal action against Catledge, which this court granted on July 3, 2019 (ECF No. 57).

The SEC now requests that the court enter final judgment as to Catledge. The SEC asks this court to "order Catledge to pay $32,737,143.65 in disgorgement but deem it satisfied based upon the entry of the restitution order in that amount, and not impose any prejudgment interest." (ECF No. 58 at 4). The SEC also seeks a permanent injunction barring future Securities Act and

Exchange Act violations. (ECF No. 58). The SEC does not request a civil penalty. (ECF No. 58).

**II.    Legal Standard**

The district court has broad powers in equity to order the disgorgement of "ill-gotten gains" obtained through the violation of federal securities laws. *SEC v. First Pac. Bancorp.*, 142 F.3d 1186, 1191 (9th Cir. 1998); *see also SEC v. Colello*, 139 F.3d 674, 679 (9th Cir. 1998) ("To order disgorgement, the district court … need find only that [the defendant] has no right to retain the funds illegally taken from the victims."). "'Disgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable.'" *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) (quoting *First Pac. Bancorp.*, 142 F.3d at 1191).

The district court has broad discretion in calculating the amount to be disgorged. *SEC v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1113 (9th Cir. 2006). The amount of disgorgement should include "all gains flowing from the illegal activities," *Id*. at 1114, though the actual assessment need only be a "reasonable approximation of profits causally connected to the violation," *First Pac. Bancorp*, 142 F.3d at 1192 n. 6 (internal citation omitted). The SEC "bears the ultimate burden of persuasion that its disgorgement figure reasonably approximates the amount of unjust enrichment." *Platforms Wireless*, 617 F.3d at 1096.

The manner in which a defendant chooses to spend the illegally obtained funds has no relevance to the disgorgement calculation. *JT Wallenbrock*, 440 F.3d at 1116. A court may order disgorgement even if the violator "'is no longer in possession of such funds due to subsequent, unsuccessful investments or other forms of discretionary spending.'" *Id*. at 1115–16 (quoting *SEC v. Thomas James Assocs.*, 738 F.Supp. 88, 95 (W.D.N.Y. 1990)).

The Securities Act and the Exchange Act permit the SEC to seek civil penalties for each violation of federal securities laws. Securities Act, 15 U.S.C. § 77t(d); Exchange Act, 15 U.S.C. § 78u(d)(3). Civil penalties are intended as a punitive measure, with the purpose of deterring future violation of securities laws. *See, e.g.*, *SEC v. Sargent*, 329 F.3d 34, 41 (1st Cir. 2003).

. . .

## III. Discussion

### a. Disgorgement

The SEC requests that this court order Catledge to disgorge $32,737,143.65, to be deemed satisfied by the amended judgment entered on May 15, 2019, in *Catledge*, case no. 3:12-cr-00678, ECF No. 339, which orders that same amount in restitution.

In the Catledge consent judgment, the parties agreed that, upon subsequent motion by the SEC, the court would determine whether it is appropriate to order disgorgement of Catledge's ill-gotten gains, and if so, the amount of disgorgement. (ECF Nos. 43, 44). Catledge further agreed to pay prejudgment interest on any disgorgement ordered. (ECF Nos. 43, 44).

Based on undisputed allegations in the complaint, Catledge and Elliott raised money from investors through the fraudulent sale of investment contracts in unregistered transactions. (ECF No. 1). These funds were to be used for the renovation and construction of the Cofresi and Juan Dolio properties, and the defendants guaranteed a return on investment. *Id*. Instead, the defendants used these funds, which were pooled in a common account, to pay investors "returns" to maintain the illusion that they were investing the money as promised, as well as to cover their operating expenses and exorbitant personal commissions, and to invest in other speculative ventures. *Id*.

All told, the complaint alleges that the defendants raised over $163 million from investors, a figure substantially greater than the $32,737,143.65 the SEC has requested. Nowhere in the SEC's motion for entry of final judgment against Catledge has it explained why it chose to adopt this figure, aside from a desire to avoid duplicative collection efforts between the SEC in this action and the U.S. Attorney's Office in the criminal action. (*See* ECF No. 58 at 4).

As the SEC has recognized in its motion, the "SEC and the public have a substantial interest in the deterrence of securities violations." *SEC v. Egan*, 856 F.Supp. 401, 402 (N.D. Ill. 1993). Disgorgement serves this interest by "depriv[ing] a wrongdoer of his unjust enrichment." *Id*. While a disgorgement assessment need only be a "reasonable approximation of profits causally connected to the violation," *First Pac. Bancorp*, 142 F.3d at 1192 n. 6 (internal citation

James C. Mahan
U.S. District Judge

- 4 -

omitted), the amount of disgorgement should include "all gains flowing from the illegal activities." *JT Wallenbrock*, 440 F.3d at 1114.

Here, the SEC has failed to demonstrate that $32,737,143.65 reasonably approximates all of Catledge's ill-gotten gains. *See id*. Without some additional showing, the court cannot assess whether the proposed figure is appropriate under the circumstances. The SEC is thus directed to submit supplemental briefing, not to exceed ten (10) pages, that explains how the approximately $163 million taken from investors was used. The SEC should address what amount of the funds, if any, was: (1) returned to investors to maintain the scheme; (2) properly invested in the Cofresi and Juan Dolio properties in accordance with the investment contracts; and (3) allocated to commissions, separate ventures, and otherwise. Each of these categories need not be addressed by an exhaustive accounting; rather, the SEC should provide only the total amount of funds that was allocated to each of the categories enumerated above.

*b. Civil penalty*

The SEC has elected to waive the imposition of a civil penalty. (ECF No. 58). There is little doubt that Catledge's violations were particularly serious and that his conduct had a substantial impact on the victims of this fraud. However, Catledge has entered a guilty plea and has been sentenced in related criminal proceedings. *See Catledge*, case no. 3:12-cr-00678, ECF Nos. 241, 242, 368. Further, the amount of disgorgement and prejudgment interest will likely place a significant strain on Catledge. It appears that no meaningful punitive or deterrent effect would result from imposition of a civil penalty. Therefore, the court finds that no civil penalty should be imposed against Catledge in this case.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the SEC's motion for entry of final judgment as to Catledge (ECF No. 58) be, and the same hereby is, GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that within fourteen (14) days of the date of this order, the SEC submit supplemental briefing, not to exceed ten (10) pages, explaining how the

approximately $163 million taken from investors was used. Namely, the SEC should address what amount of the funds, if any, was: (1) returned to investors to maintain the scheme; (2) properly invested in the Cofresi and Juan Dolio properties in accordance with the investment contracts; and (3) allocated to commissions, separate ventures, and otherwise. Each of these categories need not be addressed by an exhaustive accounting; rather, the SEC should provide only the total amount of funds that was allocated to each of the categories enumerated above.

DATED September 18, 2019.

/s/ James C. Mahan
UNITED STATES DISTRICT JUDGE