David D. Whipple (NY Reg. No. 4902565)
whippleda@sec.gov
Amy J. Oliver (Utah State Bar No. 8785)
olivera@sec.gov
Daniel J. Wadley (Utah State Bar No. 10358)
wadleyd@sec.gov
Counsel for Plaintiff
Securities & Exchange Commission
351 S. West Temple, Suite 6.100
Salt Lake City, Utah 84101
Tel.  801-524-5796
Fax: 801-524-3558

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

|  |  |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | ) |
| | ) |
| **PLAINTIFF,** | ) |
| | ) |
| **v.** | ) *Civil No. 2:12-cv-00887-JCM-NJK* |
| | ) |
| **JAMES B. CATLEDGE, DEREK F. C. ELLIOTT,** | ) **RESPONSE TO ORDER** |
| **EMI RESORTS (S.V.G.) INC., a St. Vincent and** | ) **(DOCKET NO. 72)** |
| **Grenadines corporation, EMI SUN VILLAGE,** | ) |
| **INC., a Turks and Caicos Islands corporation, and** | ) |
| **SUN VILLAGE JUAN DOLIO, INC., a Turks and** | ) |
| **Caicos Islands corporation,** | ) |
| | ) |
| **DEFENDANTS,** | ) |
| | ) |
| **and** | ) |
| | ) |
| **D.R.C.I. TRUST, a Cook Islands trust,** | ) |
| | ) |
| **RELIEF DEFENDANT.** | ) |

1

Plaintiff United States Securities & Exchange Commission (the "Commission"), through its undersigned counsel, respectfully submits this supplemental briefing as directed by the Court's October 22, 2019 Order (Docket No. 72) (the "Court Order").

The Court Order directed the Commission to submit supplemental briefing that explains what amount of the approximately $163 million of investment funds raised from investors was appropriated by the defendants prior to May 24, 2007 so that the Court could properly address issues raised by the Supreme Court's decision in *Kokesh v. S.E.C.*, 137 S. Ct. 1635 (2017).

In short, of the total $58.9 million commissions received for the entire alleged period, James B. Catledge ("Catledge"), or related parties he owned and/or controlled, received at least $30,285,656.  Of that amount, the Commission believes $6,375,927.58 is a reasonable approximation of profits causally connected to Catledge's violations of the federal securities laws that occurred during the relevant statute of limitations period for disgorgement.

## I.    Background

The Commission filed a complaint against the defendants on May 24, 2012 alleging, *inter alia*, that the defendants solicited investments in a fraudulent scheme involving the offer and sale of over $163 million of investment contracts in unregistered transactions to approximately 1,200 investors.  (Docket No. 1).  On December 21, 2012, this Court stayed this matter pending the resolution of criminal charges against Defendant Catledge. (Docket No. 23)  On July 3, 2019, this Court granted the Commission's motion to lift the stay of the case. (Docket No. 57).

At the time of the Commission's pre-suit investigation and filing of its complaint, controlling circuit precedent held that claims for disgorgement were not subject to any statute of limitations.  *See SEC v. Rind*, 991 F.2d 1486 (9th Cir. 1993).

Evidence obtained in the Commission's pre-suit investigation supported the sum totals and various other figures alleged in the complaint. One of the many investigative steps conducted by Commission staff included retaining an expert to opine on various issues, including, specifically, the amount of commissions paid on the investments and to whom they were paid. The result of that expert analysis, conducted in 2011, however, determined the *total* figures provided in the Commission's previous supplemental brief: $58.9 million in total commissions, of which, Catledge, or related parties he owned and/or controlled, received at least $30,285,656. (Docket No. 69). The expert analysis conducted in 2011 did not perform or provide a year-by-year breakdown of the flow of funds. Notably, the Commission's expert analysis closely aligns with the figures offered by a forensic analysis report attached to the initial United States' memorandum for restitution ("Forensic Analysis Report"). *United States v. James Catledge, et al.* case no. 3:12-cr-00678 (N.D. Cal) (Docket No. 322-1). Unfortunately, the Forensic Analysis Report also did not delineate yearly cash flows but offered only aggregate amounts for the period of 2004-2009. *Id.* at p. 11.

## III.    Legal Standard

As noted in the Court's Order at Docket Number 63, the district court has broad powers in equity to order the disgorgement of "ill-gotten gains" obtained through the violation of federal securities laws, *SEC v. First Pac. Bancorp.*, 142 F.3d 1186, 1191 (9th Cir. 1998), and has broad discretion in calculating the amount to be disgorged. *SEC v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1113 (9th Cir. 2006). However, the actual assessment need only be a "reasonable approximation of profits causally connected to the violation," *First Pac. Bancorp*, 142 F.3d 1192 n.6 (internal citation omitted), and the SEC

"bears the ultimate burden of persuasion that its disgorgement figure reasonably approximates the amount of unjust enrichment." *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) (quoting *First Pac. Bancorp.*, 142 F.3d at 1191).[1]

## IV.   $6,375,927.58 Reasonably Approximates Profits Causally Connected to Catledge's Violations

In light of the prior disgorgement law and practice, the limitations of the Commission's pre-suit investigation,[2] and the subsequent seven-year stay of the case which prohibited the Commission from engaging in discovery, the Commission has undertaken its best efforts to analyze the information currently available and present a reasonable approximation of the profits causally connected to Catledge's violations that occurred during the five-year period prior to the filing of the Complaint in this matter.

The analysis supporting this determination is as follows:

- The Commission's Complaint alleges that the relevant period of misconduct occurred from "approximately the fall of 2004 until early 2009" (Docket No. 1 at p.2).

- Of the $30,285,656 million in commissions received by Catledge, or related parties he owned and/or controlled, none appear to have been received later than June 30, 2009.  Accordingly, the entire alleged time period (not considering a statute of limitations) comprises a total of at least 19 fiscal quarters (one in 2004, four in each of the years 2005 – 2008, and two in 2009).

---

[1] The Supreme Court has granted certiorari to address whether courts possess authority to order disgorgement in SEC proceedings.  *See Liu v. SEC*, 18-1501 (S. Ct.).

[2] Including: (a) Defendants' extensive commingling of investor funds; (b) Defendants' failure to maintain adequate books and records; and (c) Catledge's invocation of his Fifth Amendment privilege against self-incrimination during the Commission's pre-suit investigation.

4

- If the funds at issue were appropriated in equal amounts in an equal fashion throughout the entire alleged time period,[3] the commissions at issue would amount to approximately $1,593,981.89 per quarter.

- The relevant *Kokesh* period would comprise approximately eight quarters (two in 2007, four in 2008, and two in 2009), which, multiplied by the quarterly average would total approximately $12,751,855.16.

- Moreover, in the parallel criminal case, Catledge appears to have argued his misconduct ceased in or around July 2008.[4]  For purposes of this analysis, without confirming or refuting this contention, the Commission credits the contention and eliminates any quarters after July 2008 from its analysis, thereby creating a **new total disgorgement figure of <u>$6,375,927.58</u>** (two quarters in 2007 and two quarters in 2008 multiplied by $1,593,981.89).

Based on this analysis, the Commission believes $6,375,927.58 is a reasonable approximation of profits causally connected to Catledge's violations subject to the *Kokesh* statute of limitation period and Catledge should be ordered to pay that amount in disgorgement.[5]

---

[3] Even assuming the cashflows did not flow equally period to period, this is a reasonable approach due to the limitations imposed on the Commission's pre-suit investigation as discussed herein.  *See Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 265 (1946) ("ancient" and "most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created").

[4] *United States v. James Catledge, et al.*, case no. 3:12-cr-00678 (N.D. Cal) (Docket No. 278, p.26, Defendant Catledge's Sentencing Memorandum arguing that "[a]fter a Provo [Utah] meeting, in July of 2008 . . . Impact stopped selling the Elliott products and withdrew at the direction of Catledge.").

[5] The Commission continues to request that the amount of disgorgement be deemed satisfied based on the amount of restitution entered in the parallel criminal case.

5

## V.    Conclusion

Here, ill-gotten gains were obtained,[6] and the Commission believes that $6,375,927.58 is a reasonable approximation of the amount of funds subject to disgorgement within the applicable statute of limitations period.   Moreover, Catledge neither opposed the *greater* disgorgement amount originally requested by the Commission nor argued for an alternative amount by demonstrating why the Commission's then-requested disgorgement is not a reasonable approximation. (Docket No. 61).   Accordingly, the Commission requests the Court order $6,375,927.58 in disgorgement but deem it satisfied based on the criminal restitution order.   For the Court's convenience, a revised proposed Final Judgment is attached.


DATED this 26th day of November, 2019.          Respectfully submitted,


  /s/ David D. Whipple           
David D. Whipple
Counsel for Plaintiff
Securities and Exchange Commission

---

[6] For purposes of the motion relating to this supplemental brief, Catledge has consented to the Court accepting and deeming as true the allegations of the Complaint (Docket No. 43 at pp. 2-3; Docket No. 58 at footnote 1).

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of November, 2019, I served a true and correct copy of the foregoing RESPONSE TO ORDER (DOCKET NO. 72) via the Court's ECF System.

/s/ David D. Whipple
Counsel for Plaintiff
Securities and Exchange Commission

7