# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff(s),<br><br>v.<br><br>JAMES B. CATLEDGE, et al.,<br><br>Defendant(s). | Case No. 2:12-CV-887 JCM (NJK)<br><br>ORDER |

Presently before the court is plaintiff Securities and Exchange Commission's ("SEC") motion for entry of final judgment against defendant James B. Catledge. (ECF No. 58). Catledge filed a response (ECF No. 61), but the SEC has not filed a reply, and the time for doing so has passed.

Per the court's September 18, 2019 and October 22, 2019 orders (ECF Nos. 63, 72), the SEC has also submitted two supplemental briefs. (ECF Nos. 69, 75).

## I.   Background

On May 24, 2012, the SEC filed a complaint against Catledge, Derek F.C. Elliott, EMI Resorts (S.V.G.) Inc., EMI Sun Village, and Sun Village Juan Dolio, Inc., alleging the defendants solicited investments in a fraudulent scheme involving the offer and sale of over $163 million of investment contracts in unregistered transactions to approximately 1,200 investors. (ECF No. 1). The complaint includes five causes of action: (1) violation of Section 17(a)(1) of the Securities Act of 1933, 15 U.S.C. § 77q(a)(1), against all defendants; (2) violation of Section 17(a)(2) and (3) of the Securities Act, 15 U.S.C. § 77q(a)(2) and (3), against all defendants[1]; (4)

---

[1] The complaint omits a third cause of action. (ECF No. 1).

violation of Sections 5(a) and (c) of the Securities Act, 15 U.S.C. § 77e(a) and (c), against Catledge, Elliott, EMI Sun Village, and Sun Village Juan Dolio; (5) violation of Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a), against Catledge and Elliott; and (6) unjust enrichment of relief defendant D.R.C.I. trust. *Id*.

On December 20, 2012, and SEC and Catledge filed a joint stipulation to stay this case pending resolution of the criminal charges against Catledge in *United States v. James Catledge, et al.*, case no. 3:12-cr-00678 (N.D. Cal.) ("criminal action"). (ECF No. 20). The court granted the motion to stay on December 21, 2012. (ECF No. 23).

On May 2, 2018, Catledge pleaded guilty to one count of mail fraud. *Catledge*, case no. 3:12-cr-00678, ECF Nos. 241, 242. On December 12, 2018, he was sentenced to a term of sixty (60) months imprisonment to be followed by three (3) years of supervised release. *Id*. at ECF No. 303. Restitution in the amount of $32,737,143.65 was imposed on May 15, 2019. *Id*. at ECF No. 339.

On May 3, 2018, the court approved a consent judgment between the SEC and Catledge. (ECF No. 44). The Catledge consent judgment fully incorporates the stipulated consent, which provides, in relevant part, that:

> [T]he Court shall determine whether it is appropriate to order disgorgement of ill-gotten gains and/or a civil penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and, if so, the amount(s) of the disgorgement and/or civil penalty. The Defendant further understands that, if disgorgement is ordered, Defendant shall pay prejudgment interest thereon, calculated from October, 2004, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2).

(ECF Nos. 43 at 2, 44 at 4). The consent judgment also provides that "solely for the purposes of such motion [for disgorgement], the allegations of the Complaint shall be accepted as and deemed true by the Court." (ECF No. 44). No provision is made for the imposition of a civil penalty. *Id*. In addition, the Catledge consent judgment provides for the issuance of a permanent injunction, enjoining future violation of the federal Securities Act and Exchange Act. *Id*.

On June 28, 2019, the SEC filed a motion to lift the stay (ECF No. 56) following the resolution of the criminal action against Catledge, which this court granted on July 3, 2019 (ECF No. 57).

James C. Mahan
U.S. District Judge

- 2 -

In their initial motion for final judgment as to Catledge, the SEC asked this court to "order Catledge to pay $32,737,143.65 in disgorgement but deem it satisfied based upon the entry of the restitution order in that amount, and not impose any prejudgment interest." (ECF No. 58 at 4). The SEC also asked this court to issue a permanent injunction against Catledge, enjoining him from future violation of the federal Securities Act and Exchange Act. *Id.*

On September 18, 2019, the court ordered the SEC to submit supplemental briefing to explain how the approximately $163 million taken from investors was used. (ECF No. 63). In that same order, the court declined to issue a civil penalty against Catledge. *Id.* The SEC submitted its response on October 2, 2019. (ECF No. 69). The SEC again requested disgorgement in the amount $32,737,143.65. *Id.*

In light of the Supreme Court's decision in *Kokesh v. S.E.C.*, 137 S. Ct. 1635 (2017),[2] the court ordered additional supplemental briefing. (ECF No. 72). The SEC was directed to explain what amount of the approximately $163 million at issue was appropriated by the defendants prior to May 24, 2007. *Id.* The SEC submitted its response on November 26, 2019. (ECF No. 75). The SEC now seeks disgorgement in the amount of $6,375,927.58. *Id.*

Having now received the SEC's supplemental briefing, the court will address Catledge's liability for disgorgement and the entry of a permanent injunction.

## II. Legal Standard

The district court has broad powers in equity to order the disgorgement of "ill-gotten gains" obtained through the violation of federal securities laws. *SEC v. First Pac. Bancorp.*, 142 F.3d 1186, 1191 (9th Cir. 1998); *see also SEC v. Colello*, 139 F.3d 674, 679 (9th Cir. 1998) ("To order disgorgement, the district court … need find only that [the defendant] has no right to retain the funds illegally taken from the victims."). "Disgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable." *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1096 (9th Cir. 2010) (quoting *First Pac. Bancorp.*, 142 F.3d at 1191) (internal quotation marks omitted).

---

[2] In *Kokesh*, the Supreme Court held that "[d]isgorgement in the securities enforcement context" is a "penalty" subject to a five-year limitations period. 137 S. Ct. at 1639 (2017).

The district court has broad discretion in calculating the amount to be disgorged. *SEC v. JT Wallenbrock & Assocs.*, 440 F.3d 1109, 1113 (9th Cir. 2006). The amount of disgorgement should include "all gains flowing from the illegal activities," *id*. at 1114, though the actual assessment need only be a "reasonable approximation of profits causally connected to the violation," *First Pac. Bancorp*, 142 F.3d at 1192 n. 6 (internal citation omitted). The SEC "bears the ultimate burden of persuasion that its disgorgement figure reasonably approximates the amount of unjust enrichment." *Platforms Wireless*, 617 F.3d at 1096.

The manner in which a defendant chooses to spend the illegally obtained funds has no relevance to the disgorgement calculation. *JT Wallenbrock*, 440 F.3d at 1116. A court may order disgorgement even if the violator "is no longer in possession of such funds due to subsequent, unsuccessful investments or other forms of discretionary spending." *Id*. at 1115–16 (quoting *SEC v. Thomas James Assocs.*, 738 F.Supp. 88, 95 (W.D.N.Y. 1990)) (internal quotation marks omitted).

A five-year statute of limitations applies to any "action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise." 28 U.S.C. § 2462. "Disgorgement in the securities enforcement context" is a "penalty" subject to the five-year limitations period set forth in § 2462. *Kokesh*, 137 S. Ct. at 1639 (2017).

**III. Discussion**

*a. Disgorgement*

The SEC now requests that this court order Catledge to disgorge $6,375,927.58, to be deemed satisfied by the amended judgment entered on May 15, 2019, in *Catledge*, case no. 3:12-cr-00678, ECF No. 339, which orders $32,737,143.65 in restitution. (ECF No. 75).

In the Catledge consent judgment, the parties agreed that, upon subsequent motion by the SEC, the court would determine whether it is appropriate to order disgorgement of Catledge's ill-gotten gains, and if so, the amount of disgorgement. (ECF Nos. 43, 44). Catledge further agreed to pay prejudgment interest on any disgorgement ordered, to be calculated from October 2004. (ECF Nos. 43, 44).

Based on undisputed allegations in the complaint, Catledge and Elliott raised money from investors through the fraudulent sale of investment contracts in unregistered transactions. (ECF No. 1). These funds were to be used for the renovation and construction of the Cofresi and Juan Dolio properties, and the defendants guaranteed a return on investment. *Id*. Instead, the defendants used these funds, which were pooled in a common account, to pay investors "returns" to maintain the illusion that they were investing the money as promised, as well as to cover their operating expenses and exorbitant personal commissions, and to invest in other speculative ventures. *Id*.

All told, the complaint alleges that the defendants raised over $163 million from investors, a figure substantially greater than the $6,375,927.58 the SEC now requests. To determine how much of the approximately $163 million should be ordered in disgorgement, the court directed the SEC to submit supplemental briefing on how the ill-gotten gains were used. (ECF No. 63). The SEC was directed to explain what amount of the funds, if any, was: (1) returned to investors to maintain the scheme; (2) properly invested in the Cofresi and Juan Dolio properties in accordance with the investment contracts; and (3) allocated to commissions, separate ventures, and otherwise. *Id*.

The SEC submitted the following figures in it supplemental brief:

| | |
|---|---|
| Investment Funds Raised from Investors: | <u>$163.8 million</u> |
| Funds Returned to Investors: | $6.8 million |
| Funds Properly Invested in Cofresi and Juan Dolio: | $8 million |
| Commissions: | $58.9 million |
| Funds Diverted to Separate Ventures, Operating Expenses, or Otherwise: | $90.1 million |

(ECF No. 69). The SEC contends that it is unable to further segregate these figures as a result of defendants' commingling of investor funds, defendants' failure to maintain adequate books and records, Catledge's invocation of his Fifth Amendment privilege against self-incrimination, and the stay of this case pending resolution of the criminal action (preventing the SEC from engaging in discovery). *Id*.

In light of the Supreme Court's decision in *Kokesh*, the SEC was then directed to submit additional supplemental briefing explaining what amount of the approximately $163 million at issue was appropriated by the defendants prior to May 24, 2007. (ECF No. 72). The SEC

contends that "prior disgorgement law and practice, the limitations of the Commission's pre-suit investigation, and the subsequent seven-year stay of the case which prohibited the Commission from engaging in discovery" have limited its ability to approximate "the profits causally connected to Catledge's violations." (ECF No. 75).

The SEC further argues that $6,375,927.58 is a reasonable approximation of Catledge's ill-gotten gains obtained since May 24, 2007. *Id.* The SEC arrived at this figure by: (1) determining that Catledge received $30,285,656 in commissions; (2) dividing $30,285,656 by nineteen (the number of fiscal quarters within the time period the scheme was conducted), resulting in a quarterly average of $1,593,981.89[3]; (3) multiplying $1,593,981.89 by eight (the number of fiscal quarters within the five-year limitations period), resulting in a disgorgement amount of $12,751,855.16; and (4) reducing $12,751,855.16 by half based on Catledge's argument in the criminal action that his misconduct ceased in or around July 2008, thus limiting the disgorgement figure to four fiscal quarters, for a total disgorgement amount of $6,375,927.58. *Id.*; *Catledge*, case no. 3:12-cr-00678, ECF No. 278.

*1. Disgorgement calculation*

The court holds that Catledge is liable for disgorgement in the amount of $56,920,276.24. To arrive at this figure, the court adopted the SEC's proposed methodology as a reasonable means to approximate Catledge's ill-gotten gains, with one modification. The court declines to credit Catledge's argument in the criminal action that his misconduct ceased in or around July 2008, and accordingly finds that all eight fiscal quarters within the five-year limitations period should be included in the disgorgement calculation. The court's computation follows below.

To begin, this figure contemplates the $30,285,656 in commissions Catledge received, along with the $90,100,000 in funds that were diverted to separate ventures, operating expenses, and otherwise. This figure also contemplates the $6,800,000 in funds returned to investors and

---

[3] The SEC assumes that the funds at issue were appropriated in equal amounts each quarter throughout the time period the scheme was conducted. (ECF No. 75). However, even if the appropriated funds were not taken in equal amounts from quarter to quarter (which is a reasonable assumption), "[t]he most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 265 (1946).

**James C. Mahan**
**U.S. District Judge**

- 6 -

the $8,000,000 in funds invested in the Cofresi and Juan Dolio properties, for a total of $135,185,656.00 in ill-gotten gains.

The court finds that the commissions Catledge received must be included in the disgorgement calculation as profit flowing from the illegal activity. *See JT Wallenbrock*, 440 F.3d at 1114.

The court also finds that the funds diverted to separate ventures, operating expenses, and otherwise must be included in the disgorgement calculation. The deterrent purpose of disgorgement would be left unfulfilled if Catledge were permitted to escape disgorgement here, as all of these funds were employed to prop up and further the very business he used to defraud investors. These funds facilitated the enterprise's continued, fraudulent activities to the benefit and unjust enrichment of Catledge. He cannot therefore be permitted to escape disgorgement of these funds. *See Platforms Wireless*, 617 F.3d at 1098 ("A person who controls the distribution of illegally obtained funds is liable for the funds he or she dissipated as well as the funds he or she retained."); *JT Wallenbrock*, 440 F.3d at 1114 (holding that where "the defendants benefitted from the use of investors' money to spend at the defendants' discretion—whether to cover operating expenses, invest in start-up companies, pay personal expenses or to pay fake returns to investors to perpetuate the fraud[—]" all such uses of investor money represented "an ill-gotten gain that unjustly enriched the defendants").

Additionally, the court finds that the funds returned to investors and the funds invested in the Cofresi and Juan Dolio properties must also be included in the disgorgement calculation. This scheme was able to continue because Catledge used these funds to issue fake returns and create the illusion that the funds were being properly invested in the properties. For much the same reasons as are discussed above, the illicit use of these funds benefitted and unjustly enriched Catledge, and so he is liable for disgorgement of these funds as well.

The court, in applying the SEC's proposed methodology to reasonably approximate Catledge's ill-gotten gains during the five-year limitations period, finds: (1) $135,185,656.00 was wrongfully appropriated by Catledge during the time period the scheme was conducted; (2) on average, $7,115,034.53 was appropriated per quarter over the nineteen fiscal quarters within

- 7 -

that period; and (3) an average of $7,115,034.53 appropriated per quarter for the eight fiscal quarters within the limitations period results in a total disgorgement amount of $56,920,276.24.

  *2. Disgorgement in the amount of $56,920,276.24 reasonably approximates Catledge's ill-gotten gains*

In total, the court holds that Catledge is liable for disgorgement in the amount of $56,920,276.24, to be deemed satisfied in part by the $32,737,143.65 ordered as restitution in the criminal action. *See Catledge*, case no. 3:12-cr-00678, ECF No. 339; *see also First Pac. Bancorp*, 142 F.3d at 1192 n. 6. Per the Catledge consent order, the court also holds that Catledge is liable for prejudgment interest on this amount. (*See* ECF No. 44); *see also S.E.C. v. Vassallo*, 22 F. Supp. 3d 1063, 1067 (E.D. Cal. 2014) ("[T]he purpose of pre-judgment interest in a securities fraud case is to make the defrauded investors whole."). Prejudgment interest shall be calculated from October 2004, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2).

 *b. Permanent injunctive relief as to Catledge*

In the Catledge consent judgment, Catledge submitted to the issuance of a permanent injunction barring future violation of: (1) Sections 17(a)(1), (2), and (3) of the Securities Act, 15 U.S.C. § 77q(a)(1), (2), and (3); (2) Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a) and (c); and (3) Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a). (*See* ECF No. 44).

Therefore, the court will issue a permanent injunction against Catledge, enjoining him from future violation of the aforementioned sections of the federal Securities Act and Exchange Act.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the SEC's motion for entry of final judgment as to Catledge (ECF No. 58) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Catledge is liable for disgorgement in the amount of $56,920,276.24. This amount shall be deemed satisfied in part by the criminal sentencing order

entered on May 15, 2019, in *United States v. James Catledge*, *et al.*, case no. 3:12-cr-00678 (N.D. Cal.), which orders Catledge to pay restitution in the amount of $32,737,143.65.

IT IS FURTHER ORDERED that Catledge is liable for prejudgment interest on the full disgorgement amount of $56,920,276.24. Prejudgment interest shall be calculated from October 2004, based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. § 6621(a)(2).

IT IS FURTHER ORDERED that, solely for purposes of exceptions to discharge set forth in Section 523 of the Bankruptcy Code, 11 U.S.C. § 523, the allegations in the complaint are true and admitted by Catledge, and further, any debt for disgorgement, prejudgment interest, civil penalty or other amounts due by Catledge under this judgment or any other judgment, order, consent order, decree or settlement agreement entered in connection with this proceeding, is a debt for the violation of the federal securities laws or any regulation or order issued under such laws, as set forth in Section 523(a)(19) of the Bankruptcy Code, 11 U.S.C. § 523(a)(19).

IT IS FURTHER ORDERED that Catledge and Catledge's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this judgment by personal service or otherwise are permanently restrained and enjoined from violating Sections 17(a)(1), (2) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1), (2) and (3)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly: (a) to employ any device, scheme, or artifice to defraud; (b) to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

IT IS FURTHER ORDERED that Catledge and Catledge's agents, servants, employees, attorneys and all persons in active concert or participation with them who receive actual notice of this judgment by personal service or otherwise are permanently restrained and enjoined from violating Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. § 77e(a) and (c)] by, directly or

indirectly, in the absence of any applicable exemption: (a) unless a registration statement is in effect as to a security, making use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; (b) unless a registration statement is in effect as to a security, carrying or causing to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale; or (c) making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the SEC as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act [15 U.S.C. § 77h].

IT IS FURTHER ORDERED that Catledge and Catledge's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 15(a) of the Exchange Act [15 U.S.C. § 78o(a)] to use the mails or any means or instrumentality of interstate commerce, directly or indirectly, to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security unless Catledge is registered in accordance with Section 15(b) of the Exchange Act [15 U.S.C. § 78o(b)].

IT IS FURTHER ORDERED that this court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this judgment.

The clerk shall enter final judgment against Catledge accordingly.

DATED December 16, 2019.

_____
UNITED STATES DISTRICT JUDGE